UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL C. TORNO and
JANET TORNO,

      Plaintiffs,

v.                                                    Case No. 03-74091
                                                    Hon. Victoria A. Roberts

2SI, LLC., AMW CUYUNA ENGINE CO., INC.,
ROGER ZERKLE d/b/a ZDE ENTERPRISES,
and R.E. PHELON COMPANY, INC.

      Defendants.
_____

## ORDER GRANTING IN PART, AND DENYING IN PART, PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**I.    INTRODUCTION**

      This matter is before the Court on Plaintiff's Motion for partial summary judgment against Defendant R.E. Phelon. For the following reasons, the Court **GRANTS** in part, and **DENIES** in part, Plaintiff's Motion.

**II.    BACKGROUND**

      This action arises out of injuries Plaintiff[1], Randall C. Torno, sustained when his homemade aircraft crashed. Plaintiff seeks partial summary judgment against Defendant R.E. Phelon ("Phelon"), the manufacturer of a component part used in the

---

[1] Janet Torno is also a Plaintiff, but "Plaintiff" only refers to Randall Torno for purposes of this Motion.

aircraft.

Plaintiff built his aircraft in 1999 and 2000. Plaintiff began flying it in May 2000 and logged 42.5 hours of flying time before storing it for the winter. He resumed flying the aircraft in April of 2001.

On June 8, 2001, Plaintiff flew his aircraft out of Air Rahe airfield in Petersburg, Michigan. Shortly after take-off, the aircraft experienced partial engine failure. Plaintiff attempted to turn the aircraft around and land at the airfield. Instead, he crashed in a field north of the runway. Plaintiff suffered serious injuries.

Defendant Phelon designed and manufactured the ignition trigger control used in the engine of Plaintiff's aircraft.[2] The trigger control is an electronic device that creates a signal that is sent to the engine's ignition module to fire the spark plug. Plaintiff contends that the trigger control was defective and resulted in engine failure.

Phelon denies the ignition trigger was defective and claims the alterations and errors in construction of the aircraft resulted in the engine failure. Additionally, Phelon claims Plaintiff's decision to attempt to return to the airfield rather than landing straight ahead resulted in the crash.

Plaintiff filed a Complaint on October 9, 2003. An Amended Complaint was filed on February 18, 2004. On March 24, 2006, Plaintiff filed a Motion for partial summary judgment regarding comparative negligence and Phelon's failure to follow the epoxy manufacturer's recommendation for preparation of the surface to which the epoxy is to be applied.

---

[2]Phelon did not sell the ignition trigger to Plaintiff. Plaintiff bought his engine from Defendant ZDE Enterprises, which incorporated Phelon's ignition trigger.

**III.   STANDARD OF REVIEW**

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

**IV.   APPLICABLE LAW AND ANALYSIS**

    **A.   Comparative Negligence**

Plaintiff argues that he cannot be found comparatively negligent on the basis of several acts.

        **1.   Attempting to return to the airfield**

Please see Order Granting in part, and Denying in part, Defendant R.E. Phelon's Motion for Summary Judgment, section IV, part A, subpart 2. There is a genuine issue of material fact concerning Plaintiff's own negligence.

        **2.   Failure of the Shoulder Harness**

Plaintiff claims he is not comparatively negligent for the failure of the shoulder harness because he was not required to install one in the first place. The FAA only required Plaintiff to install a seat belt. There is no dispute that Plaintiff's seat belt functioned properly. However, Plaintiff also installed a shoulder harness that failed because the harness was connected to an aluminum piece that buckled during the crash.

Phelon asserts that although Plaintiff did not have a duty imposed by the FAA to install a shoulder harness, he had a common law duty to himself to construct the aircraft in a reasonably safe manner. Specifically, Phelon argues Plaintiff had a duty to "incorporate a crashworthy seat and a properly connected safety restraint system in the event of a catastrophic failure, i.e. a crash." [Defendant's Response, p. 19].

While Plaintiff may have had a duty to properly install a shoulder harness for his own safety - regardless of whether the FAA required one - the parties do not address the specific standard of care and the reasonableness of the risk of harm. The Court cannot find as a matter of law that Plaintiff was - or was not - comparatively negligent. It remains an issue for the trier of fact.

### 3.     Use of a 1/4" Fuel Line

Plaintiff seeks a finding as a matter of law that he was not negligent for using a 1/4" fuel line versus the 3/8" fuel line called for in the engine manual. Plaintiff notes that the manual called for a 3/8" fuel line, but the engine only had a fitting for a 1/4" fuel line. Phelon's expert, Joseph Arruda, testified that you cannot use a 3/8" fuel line with a 1/4" fitting. [Exhibit 26, pp. 22-23]. Further, he testified that based on tests, use of a quarter inch fuel line was "marginally acceptable." *Id.* at 24-25.

Phelon reiterates the undisputed fact that Plaintiff used a 1/4" fuel line rather than the 3/8" recommended in the engine manual, but provides no other argument regarding how Plaintiff was negligent in using the only line that would fit the engine as manufactured - a 1/4" line.

Because Phelon fails to establish a genuine issue of material fact regarding whether Plaintiff could have used a 3/8" fuel line without altering the engine, and because Phelon directs the Court to no evidence that use of the 1/4" fuel line impaired the engine's function to any significant degree, summary judgment is appropriate on this issue. The Court finds as a matter of law that Plaintiff was not comparatively negligent for using a 1/4" fuel line.

### 4.    **Contaminating the Gas Tank**

Plaintiff argues he was not comparatively negligent for putting oil in the engine during his winterization process. Plaintiff claims the oil he applied was in accordance with Defendant 2SI's storage instructions. [Plaintiff's Exhibit 19, p.170]. Additionally, Plaintiff claims the oil is "downstream" from the fuel system so it could not have caused a blockage. Lastly, Plaintiff points out that the oil is burned out of the engine once the aircraft is started up again.

Phelon does not address Plaintiff's claim that he was not negligent for adding oil to the engine during the winterization process, and that doing so did not contribute to the engine failure.

Because there is no disputed issue of fact, summary judgment is appropriate.

### B.    **Failure to Follow 3M's Preparation Procedures**

Plaintiff asks the Court to find as a matter of law that Phelon did not follow the

preparation procedures suggested by the epoxy manufacturer, 3M. Phelon does not deny that it failed to follow the suggested procedure, but claims that whether it followed 3M's procedure is irrelevant because the procedure was a recommendation not a requirement. Phelon points to testimony by Maureen Reitman, a former employee of 3M, that 3M gives suggestions not requirements. [Phelon's Exhibit 6, pp.80-82]. Further, Reitman testified that Phelon's preparation procedure "generally worked and was effective for what they were trying to accomplish." *Id.* at 82. Reitman went on to say "within the adhesion that's necessary for Phelon, the sequence and process that Phelon has established is apparently sufficient." *Id.* at 85. It is not clear whether she found the process sufficient when the ignition trigger would be used in an aircraft versus watercraft engine.

Because there is no dispute that Phelon did not follow 3M's suggested surface preparation procedures, summary judgment is appropriate. However, this is not determinative of Phelon's negligence, because the issue is whether the procedure Phelon did use was sufficient for the foreseeable use of the product.

### C.   Phelon's Request for a Finding of Comparative Negligence

In its Response, Phelon asks the Court to find that Plaintiff was comparatively negligent. Phelon claims Plaintiff's alterations to the engine and use of incorrect parts resulted in the engine failure. The Court addresses this issue in its ruling on Phelon's Motion for summary judgment.

### V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part, and **DENIES** in part, Plaintiff's Motion for partial summary judgment.

**IT IS SO ORDERED.**

**S/Victoria A. Roberts**
**Victoria A. Roberts**
**United States District Judge**

**Dated:  May 10, 2006**

---

**The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 10, 2006.**

**S/Carol A. Pinegar**
**Deputy Clerk**

---