UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL C. TORNO and
JANET TORNO,

          Plaintiffs,

v.                                                              Case No. 03-74091
                                                                Hon. Victoria A. Roberts

2SI, LLC., AMW CUYUNA ENGINE CO., INC.,
ROGER ZERKLE d/b/a ZDE ENTERPRISES,
and R.E. PHELON COMPANY, INC.

          Defendants.
_____

### ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT R.E. PHELON'S MOTION FOR SUMMARY JUDGMENT

**I.     INTRODUCTION**

This matter is before the Court on Defendant R.E. Phelon's Motion for summary

judgment.  For the following reasons, the Court **GRANTS** in part, and **DENIES** in part,

Defendant's Motion.

**II.    BACKGROUND**

This action arises out of injuries Plaintiff[1], Randall C. Torno, sustained when his

homemade aircraft crashed.  Defendant R.E. Phelon ("Phelon"), the manufacturer of a

component part used in the aircraft, seeks summary judgment.

_____

          [1]Janet Torno is also a Plaintiff, but "Plaintiff" only refers to Randall Torno for
purposes of this Motion.

1

Plaintiff built his aircraft in 1999 and 2000.  He began flying it in May 2000 and logged 42.5 hours of flying time before storing it for the winter.  He resumed flying the aircraft in April of 2001.

On June 8, 2001, Plaintiff flew his aircraft out of Air Rahe airfield in Petersburg, Michigan.  Shortly after take-off, the aircraft experienced partial engine failure.  Plaintiff attempted to turn the aircraft around and land at the airfield.  Instead, he crashed in a field north of the runway.  Plaintiff suffered serious injuries.

Defendant Phelon designed and manufactured the ignition trigger control used in the engine of Plaintiff's aircraft.[2]  The trigger control is an electronic device that creates a signal that is sent to the engine's ignition module to fire the spark plug.  Plaintiff contends that the trigger control was defective and resulted in engine failure.

Plaintiff filed a Complaint on October 9, 2003.  An Amended Complaint was filed on February 18, 2004.  Against Defendant Phelon, Plaintiff alleges negligence; gross negligence; recklessness; breach of implied warranty; breach of express warranty; fraud and misrepresentation; and, violation of the Michigan Consumer Protection Act ("MCPA").  Phelon seeks summary judgment on Plaintiff's "product liability claim," which the Court takes to mean Plaintiff's negligence claim; the MCPA claim; and the fraud and misrepresentation claim.

On March 30, 2006, Phelon filed a Motion for summary judgment.  Plaintiff agrees to summary judgment on his claim for violation of the MCPA.  Additionally,

---

[2]Phelon did not sell the ignition trigger to Plaintiff.  It sold the device to Defendant 2SI who manufactured the engine.  Plaintiff bought his engine from Defendant ZDE Enterprises, a distributor of Defendant 2SI, which incorporated the ignition trigger.

2

"recklessness" is not an independent cause of action under Michigan law and is dismissed.

## III.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## IV.    APPLICABLE LAW AND ANALYSIS

### A.    Comparative Negligence

### 1.    Alterations

Phelon argues Plaintiff was comparatively negligent as a matter of law, because Plaintiff made material alterations to the induction and exhaust system which "changed the performance and operating temperature of the piston cylinders." [Phelon's Motion, p. 10]. Plaintiff admits that he added a "right angle bend and an additional two feet of

3

hosing" to supply air to the engine.  Phelon's expert, Dennis Moore ("Moore"), testified that these changes affected the symmetry between the two cylinders of the engine. [Plaintiff's Exhibit 25, p. 205].  Moore also testified that Plaintiff used the wrong fuel filter. [Plaintiff's Exhibit 25, p. 117].  Phelon claims that these conditions caused the engine to run hotter and on less fuel than it should have, resulting in the partial engine failure.

Plaintiff denies the alterations had any effect, because he flew the aircraft for over 40 hours without incident.  He claims it was a defect in the manufacture and design of Phelon's ignition trigger that resulted in the engine failure.  Plaintiff's expert, Daniel Klempner ("Klempner"), testified that the epoxy used in the ignition trigger lost adhesion, allowing some internal parts to migrate outward and disrupt the engine. [Plaintiff's Exhibit 36, p.68, p.97].  Klempner also claimed there should have been a mechanical stop in the ignition trigger to prevent such migration.  *Id.* at 97.  Plaintiff claims these defects were responsible for the engine failure.

There are genuine issues of fact regarding the cause of the partial engine failure in Plaintiff's aircraft, based on the parties' competing expert testimony.  Therefore, the Court cannot find as a matter of law that Plaintiff is comparatively negligent because of the alterations.

### 2.    Landing Procedure

Phelon also contends Plaintiff should be found comparatively negligent because he failed to follow FAA landing regulations.  Phelon claims Plaintiff should have attempted to land straight ahead.  Instead, Plaintiff turned around and tried to return to the airfield.  Plaintiff claims that the straight ahead landing protocol is engaged in when

4

at high elevation and cruising speeds.  Plaintiff was at low elevation when the engine failed.

A genuine issue of fact is presented.  Phelon does not include any FAA regulations that required Plaintiff to land straight ahead at the elevation he was traveling.  And, Plaintiff denies it was a violation to attempt to return to the airfield. Further, even if Plaintiff should have tried to land straight ahead, there is no indication that he would have been any more successful in avoiding injury.

Accordingly, summary judgment is denied.

**B.     MCL 600.2947(1)**

Phelon claims it is not liable because the alterations made by Plaintiff were not foreseeable.

> (1) A manufacturer or seller is not liable in a product liability action for harm caused by an alteration of the product unless the alteration was reasonably foreseeable.  Whether there was an alteration of a product and whether an alteration was reasonably foreseeable are legal issues to be resolved by the court.
> ...

MCL 600.2947(1).

The Court finds that this statute does not bar Plaintiff's action for several reasons.  First, Phelon does not allege - and Plaintiff denies - that any alteration was made by Plaintiff to "the product" manufactured by Phelon - the ignition trigger.  Phelon only alleges alterations to the induction system and use of the wrong fuel filter.

Second, if Plaintiff's alterations were reasonably foreseeable, liability is not precluded under 600.2947(1).  Phelon failed to support its allegation that Plaintiff's alterations were not foreseeable.

5

Third, if the "product" was the engine as a whole, whether the statute bars

Plaintiff's claim cannot be determined until the fact finder decides whether Plaintiff's

harm was caused by any alterations he made to the engine.  As discussed above, there

is a genuine issue of material fact on what caused the engine failure, resulting in

Plaintiff's injuries.  Section 600.2947(1) only absolves the manufacturer of liability "for

harm caused by an alteration."  It is not established that Plaintiff's harm was caused by

his alterations.  Therefore, summary judgment based on 600.2947(1) is not appropriate.

### C.    Duty to Plaintiff

Phelon argues it is entitled to summary judgment on Plaintiff's product liability

claim because it did not know or consent to the use of its ignition trigger in an aircraft

engine.  Phelon sold the ignition trigger to Defendant 2SI for use in watercraft.  Phelon

contends Plaintiff's use was not foreseeable and that the ignition trigger was not

defective in any case.  Based on these allegations, Phelon concludes it did not owe a

duty to Plaintiff, so it cannot be liable for Plaintiff's injuries under a product liability

theory.

In deciding this issue, there are certain principles the Court is mindful of.

Certainly, "whether a duty exists is a question of law, an issue solely for the court to

decide."  *Murdock v. Higgins*, 454 Mich. 46, 53 (1997).  Furthermore, "[a] manufacturer

has a duty to design its product so as to eliminate any unreasonable risk of foreseeable

injury."  *Prentis v. Yale Manufacturing Company*, 421 Mich. 670, 693 (1984).  But,

whether a design is defective is a question of fact.  *Ghrist v. Chrysler Corporation*, 451

Mich. 242, 249 n.13 (1996).

As already discussed, there is a genuine issue of material fact on whether the

6

ignition trigger is defective.

Further, whether there was an unreasonable risk of foreseeable injury to the Plaintiff is also a question of fact. *Gregory v. Cincinnati Incorporated*, 450 Mich. 1, 13 (1995). There is a genuine issue of fact regarding whether Plaintiff was a foreseeable user of the ignition trigger. Plaintiff alleges the ignition trigger is generic and no alterations were needed to use it in an aircraft. Additionally, Plaintiff provides evidence that Defendant 2SI holds itself out as a seller of two cycle engines for use in watercraft, aircraft, sport vehicles, etc. [Plaintiff's Exhibit 43]. Phelon knew 2SI sold two cycle engines for use in several applications. Therefore, the Court cannot say as a matter of law, that Phelon could not foresee that its ignition trigger would be incorporated into an engine sold for use in an aircraft.

**D.    Risk Utility Test**

Phelon argues the Plaintiff fails to establish a prima facie case of design defect. Phelon relies on *Hollister v. Dayton Hudson Corporation*, 188 F.3d 414 (6th Cir. 1999)(*Hollister I*), for the elements of a prima facie case of design defect. *Hollister I* was superceded by *Hollister v. Dayton Hudson Corporation*, 201 F.3d 731 (6th Cir. 2000)(*Hollister II*). The elements relied on by Phelon remain the same; in order to establish a prima facie case of design defect under Michigan law, the plaintiff must produce evidence showing that:

(1) the severity of the injury was foreseeable by the manufacturer;

(2) the likelihood of occurrence of [his] injury was foreseeable by the manufacturer at the time of distribution of the product;

(3) there was a reasonable alternative design available;

7

(4) the available alternative design was practicable;

(5) the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's product; and,

(6) omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.

*Hollister II*, 201 F.3d at 738.

Plaintiff claims *Hollister* is inapplicable because it did not take into account the

1995 amendment to MCL 600.2946(2), effective March 28, 1996.  Section 600.2946(2)

governs liability for production[3] defects:

> (2) In a product liability action brought against a manufacturer or seller for harm allegedly caused by a production defect, the manufacturer or seller is not liable unless the plaintiff establishes that the product was not reasonably safe at the time the specific unit of the product left the control of the manufacturer or seller and that, according to generally accepted production practices at the time the specific unit of the product left the control of the manufacturer or seller, a practical and technically feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others.  An alternative production practice is practical and feasible only if the technical, medical, or scientific knowledge relating to production of the product, at the time the specific unit of the product left the control of the manufacturer or seller, was developed, available, and capable of use in the production of the product and was economically feasible for use by the manufacturer.  Technical, medical, or scientific knowledge is not economically feasible for use by the manufacturer if use of that knowledge in production of the product would significantly compromise the product's usefulness or desirability.
> . . .

It is not necessary for the Court to decide if *Hollister II* is still an accurate

statement of Michigan law, in light of §2946, because even accepting Phelon's

---

[3]"Production," among other processes, includes manufacture and/or design. MCL 600.2945(i).

8

contention that *Hollister II* applies, Phelon is not entitled to summary judgment.

Under the elements set forth in *Hollister II*, Plaintiff establishes a prima facie case because:

(1)     There is a genuine issue of material fact surrounding the foreseeability of 2SI's use of Phelon's ignition trigger in an aircraft engine.  If Plaintiff's use of the ignition trigger in an aircraft was foreseeable, undoubtedly the severity of his injuries from a crash caused by the allegedly faulty operation of the ignition trigger was foreseeable.

(2)     As discussed above, there is a genuine issue of material fact on the foreseeability of the incorporation of the ignition trigger in an engine used in an aircraft.

(3)     Plaintiff does propose, through expert testimony, an alternative design.  Plaintiff claims Phelon should have used an electronics grade epoxy that includes features resulting in better adhesion. [Plaintiff's Exhibit 35].  Additionally, Plaintiff asserts that Phelon did not properly prepare the surface before applying the epoxy. [Plaintiff's Exhibit 17].

(4)     Plaintiff presents evidence of available alternative epoxies from the same manufacturer, 3M Corporation. [Plaintiff's Exhibit 44].  Plaintiff also provides the recommendations of 3M for proper application of the epoxy used by Phelon. [Plaintiff's Exhibit 17, p. 4].

(5)     Plaintiff asserts that either proper application of the epoxy used by Phelon, or use of a higher quality epoxy, would have prevented the alleged separation that Plaintiff claims resulted in his injuries. [Plaintiff's Response, p. 6].

9

(6)     Plaintiff alleges that the failure to follow proper procedure in applying the epoxy, and failing to use an appropriate epoxy, rendered Phelon's product unsafe.

### E.     Manufacturing Defect

Phelon contends that Plaintiff failed to allege a manufacturing defect claim. Design and manufacturing defects are both governed under MCL 600.2946(2), *supra*. Phelon argues that, contrary to Plaintiff's expert's testimony, there was no separation of the epoxy.  Clearly, this is a question of fact.  There is competing expert testimony on separation.  Additionally, Phelon claims Plaintiff failed to establish that the epoxy was underfilled or that the surface preparation before applying the epoxy was inadequate. However, Plaintiff provides an expert report from Klempner making those exact findings. [Plaintiff's Exhibit 35].

Obviously, Phelon does not understand the purpose of summary judgment as contemplated by FRCP 56.  It is not the province of the Court to weigh the evidence and determine what expert to find credible; that is the responsibility of the trier of fact.  The Court is permitted to grant summary judgment only where there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is not appropriate on Plaintiff's manufacturing defect claim; there is a genuine issue of material fact surrounding the elements of 600.2946(2).

### F.     Failure to Warn

Phelon asserts Plaintiff has not established a claim for failure to warn.  Under Michigan law, to establish a claim that a product is defective due to a failure to warn, a plaintiff must show that a manufacturer or seller:

10

(1) had actual or constructive knowledge of the alleged danger;

(2) had no reason to believe that consumers would know of this danger; and

(3) failed to exercise reasonable care to inform consumers of the danger.

*Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 619 (6th Cir. 2001).

Further, a Michigan statute provides that "a manufacturer or seller is not liable unless the plaintiff proves that the manufacturer knew or should have known about the risk of harm based on the scientific, technical, or medical information reasonably available at the time the specific unit of the product left the control of the manufacturer." MCL 600.2948(3).

Plaintiff establishes a prima facie case of failure to warn. Plaintiff claims Phelon used the wrong epoxy for an engine application and did not apply the epoxy it did use in accordance with the manufacturer's recommendations. [Plaintiff's Exhibit 35]. Assuming the validity of Plaintiff's expert report, Phelon knew or should have known there was a danger in using an epoxy not designed for the conditions and not applying the epoxy as directed by the manufacturer. Phelon had no reason to believe consumers would know of this alleged danger because it is not visible or easily ascertainable. Lastly, there is no indication that Phelon warned consumers of the potential danger.

Consequently, summary judgment is not appropriate.

**G.    Speculation and Conjecture**

Phelon contends that impermissible speculation and conjecture is necessary to support Plaintiff's claim of negligence. Phelon argues that the Plaintiff cannot establish

11

with any reasonable degree of engineering certainty that his theory of the cause of the accident actually occurred.

Essentially, Phelon is challenging the validity of Plaintiff's expert findings.  That is not the function of a summary judgment motion.  The Court must accept the findings as true.

### H.      Fraud and Misrepresentation

Phelon states that Plaintiff failed to establish the elements of fraud, although it does not provide any argument. [Phelon's Motion, p. 19].  Plaintiff does not address the claim in its Response.

Under Michigan law, a plaintiff must allege the following to state a claim for fraud: (1) defendant made a material representation; (2) the representation was false; (3) that when defendant made the representation it knew that it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that defendant made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that plaintiff suffered injury.  *Kassab v. Michigan Basic Property Ins. Assoc.*, 441 Mich. 433, 442 (1992).

Undoubtedly, there is no evidence to support a claim that Phelon made an affirmative representation to Plaintiff, with the intention that Plaintiff would act upon it, and that the Plaintiff did act in reliance upon a representation by Phelon.  Therefore, summary judgment is proper.

## V.      CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part, and **DENIES** in part,

12

Defendant R.E. Phelon's Motion for summary judgment.  The Court **GRANTS** summary judgment on Plaintiff's claims for: (1) violation of the Michigan Consumer Protection Act; (2) recklessness; and (3) fraud and misrepresentation.  Plaintiff's claims for:  (1) negligence; (2) gross negligence; (3) breach of implied warranty; and (4) breach of express warranty, remain for trial.

      **IT IS SO ORDERED.**


                                          **S/Victoria A. Roberts**
                                          **Victoria A. Roberts**
                                          **United States District Judge**

**Dated:  May 10, 2006**

---

**The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 10, 2006.**

**S/Carol A. Pinegar**
**Deputy Clerk**

---

13