UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL C. TORNO and
JANET TORNO,

      Plaintiffs,

v.                                                                  Case No. 03-74091
                                                                 Hon. Victoria A. Roberts

2SI, LLC., AMW CUYUNA ENGINE CO., INC.,
ROGER ZERKLE d/b/a ZDE ENTERPRISES,
and R.E. PHELON COMPANY, INC.

      Defendants.
_____/

**ORDER GRANTING PLAINTIFF'S SECOND MOTION FOR
PARTIAL SUMMARY JUDGMENT AND MOTION IN LIMINE**

**I.    INTRODUCTION**

This matter is before the Court on Plaintiff's Second Motion for partial summary judgment and motion in limine (Doc. #134) based on the deposition testimony of Defendant's expert, Robert Banks. For the following reasons, the Court **GRANTS** Plaintiff's Motion.

**II.    BACKGROUND**

This action arises out of injuries Plaintiff[1], Randall C. Torno, sustained when his homemade aircraft crashed. Plaintiff seeks partial summary judgment against

---

[1]Janet Torno is also a Plaintiff, but "Plaintiff" only refers to Randall Torno for purposes of this Motion.

Defendant R.E. Phelon ("Phelon"), the manufacturer of the ignition trigger control used in the aircraft engine. Specifically at issue in this Motion is the seat and shoulder harness Plaintiff installed. Defendant asserts as an affirmative defense, Plaintiff's comparative negligence based on the alleged negligent design of the seat and harness.

Plaintiff built his aircraft in 1999 and 2000. Plaintiff began flying his aircraft in May 2000 and logged 42.5 hours of flying time before storing it for the winter. He resumed flying the aircraft in April of 2001.

On June 8, 2001, Plaintiff flew his aircraft out of Air Rahe airfield in Petersburg, Michigan. Shortly after take-off, the aircraft experienced partial engine failure. Plaintiff attempted to turn the aircraft around and land at the airfield. Instead, he crashed in a field north of the runway. Plaintiff suffered serious injuries.

The ignition trigger control designed and manufactured by Phelon is an electronic device that creates a signal that is sent to the engine's ignition module to fire the spark plug. Plaintiff contends that the trigger control was defective, resulting in his aircraft's engine failure.

### III.   STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would

necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

**IV.  APPLICABLE LAW AND ANALYSIS**

    **A.  Comparative Negligence for the Seat and Shoulder Restraint**

Plaintiff seeks a finding as a matter of law, that he was not comparatively negligent for his injuries based on the seat and shoulder restraint he installed in his aircraft.

The standard for determining liability for purposes of comparative negligence is identical to that of negligence. *Lowe v. Estate Motors Limited*, 428 Mich. 439, 455-456 (1987). The elements of negligence are: (1) duty; (2) breach of that duty; (3) causation; and (4) damages. *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000).

    **1.  The Shoulder Restraint**

The shoulder restraint installed by Plaintiff was connected to a "lightly constructed" piece of aluminum that buckled on impact. [Plaintiff's Exhibit 29].

Defendant admits there are no regulations, or specifications in the aircraft plans, which required Plaintiff to install a shoulder harness. Nonetheless, Defendant asserts Plaintiff had a duty to exercise reasonable care for his own safety.

The Court need not reach the question of whether Plaintiff had such a duty, or whether he breached any duty; evidence on causation is insufficient for the defense of

3

comparative negligence to reach a jury.

To establish causation, it is the complaining party's burden to create a reasonable inference of causation, not mere speculation. *Skinner v. Square D Company*, 445 Mich. 153, 164 (1994). It is not sufficient to submit a causation theory that, "while factually supported, is, at best, just as possible as another theory." *Id.* "There must be more than a mere possibility that unreasonable conduct...caused the injury." *Id.* at 165. The jury cannot be permitted to guess. *Id.*

Plaintiff argues that Phelon cannot meet its burden to establish that his failure to properly install a shoulder restraint caused his injuries. Banks testified that Plaintiff "would have a decreased chance or a lesser, a less propensity, for having this injury" if the shoulder restraint did not fail. [Phelon's Exhibit 41, p. 29]. Banks further testified that he could not say if Plaintiff would have suffered a vertebral fracture had the restraint not failed. *Id.*

> Q. So [Plaintiff] could have had a paralyzing injury to his spine even if the shoulder restraint did not fail?
>
> A. That is possible. But it becomes less likely when he's held more vertically in his seat.

[Exhibit 41, p. 29].

Phelon submits expert testimony that the G force[2] Plaintiff was subjected to during the crash was likely between 17 and 40 Gs. [Phelon's Exhibit 41, pp. 15-16]. Phelon claims the human vertebra can "withstand up to approximately 25 Gs before a spinal cord fracture." [Phelon's Response, p. 9]. However, when the spine is in flexion,

---

[2] A G is a unit of force equal to the gravity exerted on a body at rest. WEBSTER'S II NEW COLLEGE DICTIONARY 455 (1995).

4

*i.e.* bent forward, it is more susceptible to injury. *Id.* Banks testified that Plaintiff would have had "a decreased chance or a lesser, a less propensity" for his spinal injury if the shoulder restraint had not failed - presumably because his spine would not have been in flexion. [Phelon's Exhibit 41, p. 29]. As noted above, Banks testified that Plaintiff could have had a paralyzing spinal injury even if the shoulder restraint functioned properly, but it would have been less likely. *Id.*

Accepting Banks testimony as accurate and Phelon's allegations as true, Phelon's causation theory is not sufficiently supported to go to the jury. Phelon claims Plaintiff could have withstood approximately 25 Gs without a spinal fracture. However, Banks' estimate is that the Gs during the crash were between 17 and 40. There is no evidence that indicates it was more or less likely that the Gs exerted on Plaintiff at impact were more or less than 25. Therefore, it is as equally possible that proper installation of the shoulder restraint would not have made a difference in Plaintiff's injuries.

Accordingly, Phelon cannot submit its theory of causation to the jury. Otherwise, the jury would be left to guess if the Gs were at a level where the use of a shoulder restraint would have made a difference.

Summary judgment is proper on the shoulder restraint defense.

**2.     The Seat Design**

Plaintiff also seeks summary judgment that he was not comparatively negligent for his seat design. Phelon argues Plaintiff should have used a seat that yielded more during impact. The more a seat yields, the more G force it absorbs, and the less the occupant absorbs.

5

In his report, Banks noted that "[t]he solid metal seat and underlying structures, as well as the use of convention foam cushion, may have also increased the potential for the lumbar spine fracture." [Plaintiff's Exhibit 29, p. 3]. When questioned during his deposition about the seat used by Plaintiff, which consisted of a solid metal seat with a generic cushion, Banks stated:

> Q. Okay...Can you tell me what would have been the forces that would have been placed on the spine on this crash with a solid metal seat?
>
> A. Once again, the - the forces would be very close to the forces I would derive from the calculations I have done so far. The fact that the seat itself did not yield and nor did the structure underneath the seat, really, precludes any, really, further discussion other than - or further calculation other than what I have done. The fact that the seat did not yield, really, allows these calculations to - to continue to be valid.
>
> Q. What would have been the difference in force on the spine had he been on a solid metal seat as opposed to the seat that he was on?
>
> A. My interpretation is that the seat he was on was a solid metal seat.
>
> Q. No. I'm talking about a solid metal seat without any cushioning at all, sitting on a piece of metal.
>
> A. I don't think the cushioning that he used, really, made very much difference. It was a compressive - It was a compressible cushion. It would have been fully compressed under his weight, most likely, and I think there would have been very little difference in what G load his spine would have seen whether he had that cushion or not.

[Banks' Deposition, pp. 32-33]. Banks testified that the seat designed by Plaintiff did not alter the G force calculation reached with regard to the shoulder restraint. He did not make any calculations regarding what injuries would have resulted from a properly designed seat.

Phelon's theory that Plaintiff's seat design was negligent cannot be submitted to

6

the jury because it would require speculation.  There is no evidence to support an inference that a different seat design would have absorbed enough Gs to prevent, or reduce, Plaintiff's injuries.

### B.     Precluding Banks' Testimony

Plaintiff seeks to preclude portions of Banks' testimony regarding causation because he claims his testimony is not based on scientific principles and is unsupported speculation.

Banks' testimony concerning the contribution the seat design and the shoulder restraint made to Plaintiff's injuries is precluded; it is no longer relevant in light of the Court's ruling that Phelon cannot present its comparative negligence defense on those bases.

Plaintiff also seeks to preclude Banks from testifying that Plaintiff's injuries were caused by his landing procedure.  Specifically, Phelon alleges Plaintiff was negligent in turning sharply to the left and trying to return to the runway when the engine failed. Phelon contends Plaintiff should have followed protocol and attempted to land straight ahead.  Because Banks did not perform an accident reconstruction, Plaintiff moves to prohibit him from testifying that landing somewhere else would have resulted in less severe injuries.

Banks testified that the only terrain he reviewed in preparation for his testimony was the terrain Plaintiff landed on, not the surrounding areas. [Phelon's Exhibit 41, p.47].  From Banks' testimony it is clear he believes Plaintiff made a poor decision by trying to return to the runway, but Banks does not offer any alternative.  Banks admitted he did not try to outline where Plaintiff could have landed. [Exhibit 41, p. 65].  Banks

admitted he did not know the speed of the aircraft or its altitude when it lost power. *Id.* at 62-63. If Banks: (1) did not review the surrounding areas; (2) cannot identify where Plaintiff should have landed; and, (3) does not know the speed or altitude of the aircraft when it lost power, he cannot say with any reasonable degree of certainty that Plaintiff's injuries would have been prevented, or less severe, if he had followed protocol and attempted to land straight ahead.

Accordingly, Banks is precluded from testifying that Plaintiff's decision to return to the runway resulted in more severe injuries.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Second Motion for partial summary judgment and Motion in limine on the basis of the deposition testimony of Defendant's expert, Robert Banks.

**IT IS SO ORDERED.**

                                                 s/Victoria A. Roberts
                                                 **Victoria A. Roberts**
                                                 **United States District Judge**

**Dated: May 31, 2006**

> **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 31, 2006.**
>
> **s/Linda Vertriest**
> **Deputy Clerk**