UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL C. TORNO and
JANET TORNO,

    Plaintiffs,

v.                                               Case No. 03-74091
                                               Hon. Victoria A. Roberts

2SI, LLC., AMW CUYUNA ENGINE CO., INC.,
ROGER ZERKLE d/b/a ZDE ENTERPRISES,
and R.E. PHELON COMPANY, INC.

    Defendants.
_____/

## ORDER DENYING MOTION FOR RECONSIDERATION

**I.    INTRODUCTION**

This matter is before the Court on Defendant R.E. Phelon's Motion for reconsideration. For the following reasons, the Court **DENIES** Defendant's Motion.

**II.    BACKGROUND**

The underlying facts are sufficiently set forth in the Court's Order granting in part, and denying in part, Defendant Phelon's Motion for summary judgment entered May 10, 2006. [Doc. 141]. Also, the Court's Order of May 30, 2006, concerning Plaintiff's Motion in limine to preclude certain testimony of Defendant's experts as speculative and scientifically unreliable opinion testimony, contains additional facts.

**III.    STANDARD OF REVIEW**

        (g) Motions for Rehearing or Reconsideration.

1

(1) Time.  A motion for rehearing or reconsideration must be filed within 10 days after entry of the judgment or order.

(2) No Response and No Hearing Allowed.  No response to the motion and no oral argument are permitted unless the court orders otherwise.

(3) Grounds.  Generally, and without restricting the court's discretion, **the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication.  The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.**

E.D. Mich. LR 7.1(g)(emphasis added).

## IV.   APPLICABLE LAW AND ANALYSIS

Defendant seeks reconsideration of the Court's Order Granting Plaintiff's second Motion for partial summary judgment and Motion in limine, entered May 31, 2006. [Doc. 147].

### A.   Piloting Error

Defendant argues that the Court erred in precluding Banks' testimony that Plaintiff's decision to return to the runway resulted in more severe injuries.

Banks' testimony continues to be inadmissible; there is no factual basis to support his conclusion that Plaintiff's injuries would be less severe if he had tried to land straight ahead rather than attempt to return to the runway.

FRE 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the

2

witness has applied the principles and methods reliably to the facts of the case.

It is the trial judge's responsibility to ensure that expert testimony admitted pursuant to FRE 702 is relevant and reliable. See *Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579 (1993) and *Kumho Tire Co, Ltd v. Carmichael*, 526 U.S. 137, 141 (1999).

"An expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by 'good grounds' based on what is known." *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800-801 (6th Cir. 2000)(citations omitted). "The expert's conclusions regarding causation must have a basis in established fact and cannot be premised on mere suppositions...[h]owever, mere 'weakness in the factual basis of an expert witness' opinion bear on the weight of the evidence rather than on its admissibility." *Id*. at 801 (citations omitted).

As noted in this Court's original Order:

Banks testified that the only terrain he reviewed in preparation for his testimony was the terrain Plaintiff landed on, not the surrounding areas. [Phelon's Exhibit 41, p.47]. From Banks' testimony it is clear he believes Plaintiff made a poor decision by trying to return to the runway, but Banks does not offer any alternative. Banks admitted he did not try to outline where Plaintiff could have landed. [Exhibit 41, p. 65]. Banks admitted he did not know the speed of the aircraft or its altitude when it lost power. *Id*. at 62-63. If Banks: (1) did not review the surrounding areas; (2) cannot identify where Plaintiff should have landed; and, (3) does not know the speed or altitude of the aircraft when it lost power, he cannot say with any reasonable degree of certainty that Plaintiff's injuries would have been prevented, or less severe, if he had followed protocol and attempted to land straight ahead.

Banks does not rely upon "sufficient facts or data" to support a conclusion that when Plaintiff's aircraft's engine failed, his injuries would have been less severe if he

had attempted to land straight ahead. Moreover, based on his testimony, it does not appear Banks intended to testify to that conclusion:

> Q. So where he had the capability of landing, what his speeds would have been, all of these things of this nature, and doing it with an engine that's lost power, these are things that you have not calculated?
>
> A. I have not determined the decision tree that he would have had to have embarked upon had he made - had [sic] his first decision been correct. His first decision was wrong. Had his first decision, in a - in a series of decisions, to force land the aircraft, had his first decision been correct I did not, then, follow along about later decisions. I can just tell you that his first decision was incorrect. What he would have done, had he made the correct decision, I have not tried to analyze because he didn't make that decision.
>
> * * *
>
> A. ...it was not my intent nor purp - purpose to do an accident reconstruction on this. So those kind of questions I really made no - no effort to determine which trees or where his precise path was. My interest in the injuries was, where the aircraft ended up and, also the - his decision to turn the aircraft left, apparently, to come back to the field which was an inappropriate decision.
>
> Q. Well, do you have an alternative landing spot that Mr. Torno should have used, because Mr. Moore indicated that he didn't have enough information to - to select one?
>
> A. Clearly, I do not. And I have addressed that question. I - I - his decision to turn left was inappropriate. Had he made a different decision, I have not tried to outline where he could land.
>
> * * *
>
> Q. Okay. You're here to say that - that Mr. Torno was going to receive a lesser injury had he chose some other point in which to land; is that correct?
>
> A. I have not said that.
>
> Q. Okay. Are you in a position to say that Mr. Torno would have received a lesser injury had he gone in the manner that you wish that he did?

> A. I'm in a position to say that his chances of receiving a lesser injury were much better than in making the decision he made.
>
> * * *
>
> Q. And you're able to say with a reasonable degree of scientific certainty that had he chose a different method that he would not have received as severe an injury as he did; is that correct?
>
> A. Again, that's not what I said. I said that his chance of receiving a severe injury would have been much reduced.

[Banks Deposition, pp. 60-67].

Pursuant to FRE 702, Banks' testimony on this issue is not reliable, will not assist the fact-finder and is, therefore, inadmissible.

**B.    Shoulder Restraint**

Among other things, Defendant argues that Banks should be allowed to testify concerning causation and the facial injuries and closed head injury allegedly suffered by Plaintiff. However, Plaintiff is not claiming a closed head injury. [Response, p. 6]. Moreover, Banks' opinions regarding facial injuries were not a subject of Plaintiff's Motion for summary judgment, and they will not now be considered in a Motion for reconsideration.

Defendant also asserts that the Court erred in disallowing Banks' testimony that failure of the shoulder restraint caused or contributed to Plaintiff's injuries.

In the Court's original Order, the Court found Defendant could not argue Plaintiff's comparative negligence as a theory of causation to the jury because it was too speculative. Banks testified that Plaintiff experienced between 17 and 40 G's on impact. Defendant conceded that a spine is expected to fracture at approximately 25 G's. No evidence is in this record to support a conclusion that it was more or less

5

probable that a properly functioning shoulder restraint would reduce the G's enough to reduce Plaintiff's injuries, since it was just as probable that even with a properly functioning shoulder restraint, the G's on impact would have been above 25.

Defendant now states "it is significant to note that the Plaintiff has made a significant recovery from his spinal injury. In fact, he is not confined to a wheelchair, but can ambulate with the assistance of crutches. Thus, the Plaintiff did not sustain a catastrophic crushing injury to the spinal cord, but merely sustained a spinal cord injury just on the threshold of the impact necessary to result in a partial spinal cord injury." [Defendant's Motion, p. 3]. However, Defendant does not provide medical evidence or supplemental expert opinion that develops or buttresses its argument that Plaintiff's recovery and "...injury...on the threshold of the impact necessary..." requires reconsideration of the Court's ruling.

In its original Order, the Court concluded that Defendant could not meet its burden to establish a causal connection between the shoulder restraint and Plaintiff's injuries. Even if Defendant could somehow establish the causal connection, it is not entitled to a different disposition because Defendant cannot establish through Banks' testimony that Plaintiff breached a duty by failing to properly install a shoulder restraint.

The standard for determining liability for purposes of comparative negligence is identical to that of negligence. *Lowe v. Estate Motors Limited*, 428 Mich. 439, 455-456 (1987). The elements of negligence are: (1) duty; (2) breach of that duty; (3) causation; and (4) damages. *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000).

Plaintiff certainly had an obligation to exercise reasonable care for his own safety. *Lowe*, 428 Mich. at 456. The next inquiry is whether Plaintiff breached his duty

to exercise reasonable care for his own safety, by improperly installing a shoulder restraint. Whether conduct is a breach of the obligation to exercise reasonable care is a question of "the specific standard of care: the reasonableness of the risk of harm thereby created." *Id*.

> The trier of fact decides whether reasonable precautions have been taken and thereby establishes the specific standard of care...[t]he common formula for the negligence standard is the conduct of a reasonable man under like circumstances. In applying this standard under the instructions of the court, the jury normally is expected to determine what the general standard of conduct would require in the particular case, and so to set a particular standard of its own within the general one. This function is commonly said to be one of the determination of a question of fact, and not of law.
>
> The reasonableness of the risk depends on whether its magnitude is outweighed by its utility. The Restatement provides: Where an act is one which a reasonable man would recognize as involving a risk of harm...the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done.
>
> [T]he specific standard of care, <u>whether the actor's conduct in the particular case is below the general standard of care, including whether in the particular case the risk of harm created by the actor's conduct is or is not reasonable is appropriately within the province of the jury, unless all reasonable persons would agree or there is an overriding public policy</u>.

*Lowe*, 428 Mich. at 456-457 (relying on *Moning v. Alfono*, 400 Mich. 425 (1977)(emphasis added)).

Defendant wants to rely on Banks' testimony to assist the trier of fact in determining the standard of care. However, Banks' conclusion that "due diligence and the duty [Plaintiff] has to himself does require such a restraint" is not supported by any facts. [Banks Deposition, p. 18]. The following exchange makes this clear:

> Q.   Okay. Are you here to testify that all experimental aircraft are negligently designed if they do not have shoulder restraints?

7

>    A.   No.
>
>    Q.   Well, what would single out Mr. Torno's aircraft for being negligently designed for not having an adequate shoulder restraint then?
>
>    A.   Negligent design is, in this form, a legal concept that I will not be addressing.
>
>    Q.   Okay. What is inappropriate about all experimental aircraft made in this country that do not have a shoulder restraint?
>
>    A.   I am not addressing all aircraft in this country that do not have a shoulder restraint.
>
>    Q.   Would it be fair to say that you are not addressing all experimental aircraft that do not have a shoulder restraint, but you are addressing Mr. Torno's aircraft?
>
>    A.   Correct.
>
>    Q.   Okay. And that you are indicating that Mr. Torno breached a particular standard of care, in your opinion, for not having an adequate shoulder restraint, but you will not comment on all of the other experimental aircraft in country [sic] that - that do not have shoulder restraints?
>
>    A.   No. No. I am - As I had mentioned earlier, I am explaining how his injuries occurred.
>
>    Q.   Well, I'm not getting to the causation issue right now. I'm getting into the standard of care issue. So I take it you will not have any comment on whether or not Mr. Storno - Mr. Torno breached any standard of care with regard to the shoulder restraint?
>
>    A.   That's correct. I don't know what standard of care means. That is a clinical concept to me and I will not be addressing standard of care issues.

[Banks Deposition, pp.20-22].

Banks' testimony that Plaintiff should have installed a shoulder restraint is inadmissible under FRE 702 because his testimony is not "based upon sufficient facts or data." He does not give any basis for his conclusion that Plaintiff should have

8

installed a shoulder restraint. Additionally, Banks' testimony regarding the shoulder restraint will not be helpful to the jury because it does not provide any information that would help them determine the appropriate standard of care, other than his unsupported conclusion that Plaintiff should have installed a shoulder restraint.

This testimony as well, is neither reliable nor supported, and will not assist the jury in determining the applicable standard of care.

### C.     Seat Cushion

Defendant also seeks reconsideration of the Court's Order concerning the seat cushion.

The Court originally precluded the argument because it called for speculation, similar to the argument concerning the shoulder restraint.

As with the shoulder restraint, Defendant fails to present causation evidence Assuming *arguendo* that it could, Defendant fails to present any evidence that would assist the trier of fact in determining the standard of care with regard to seat cushion use.

### V.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for reconsideration.

**IT IS SO ORDERED**.

                                        s/Victoria A. Roberts  
                                        Victoria A. Roberts  
                                        United States District Judge

Dated:  June 27, 2006

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 27, 2006.
>
> s/Linda Vertriest
> Deputy Clerk